IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

STEVEN ALLEN BROWNELL,

                    Plaintiff,                          OPINION AND ORDER

          v.                                            22-cv-117-wmc

MICHAEL RIVERS, JASON BENZEL,
DAISY CHASE, MICHELLE BURTON,
SANDRA DEYOUNG, and
WISCONSIN DEPARTMENT OF
CORRECTIONS SECRETARY JARED HOY,

                    Defendants,

Plaintiff Steven Allen Brownell, a former state prisoner who is representing himself, asserts claims against Wisconsin Department of Corrections ("DOC") employees Jason Benzel, Daisy Chase, Michelle Burton, Sandra DeYoung and Michael Rivers, as well as its Secretary, Jared Hoy, in his official capacity. Specifically, plaintiff claims that defendants discriminated against him based on his disability in violation of the Rehabilitation Act by denying his requests to be transferred to another correctional institution and denying him access to personal care workers. (Dkt. #61, at 14-15.) Before the court are plaintiff's motions for: clarification regarding this court order on defendants' motion for summary judgment based on exhaustion (dkt. #106); clarification regarding what evidence is relevant to plaintiff's remaining claims (dkt. #117); and leave to identify and disclose a medical expert witness (dkt. #121). Also pending is defendants' motion for summary judgment (dkt. #102). For the reasons explained below, the court will GRANT plaintiff's first motion for clarification, DENY plaintiff's second motion for clarification and separate motion for leave to identify and disclose a medical expert witness, and GRANT defendants' motion for summary judgment.

FACTS

## A. Background

Plaintiff Steven Allen Brownell is a quadriplegic with an "incomplete spinal cord injury," who uses a wheelchair and requires assistance for certain, essential daily tasks and safe mobility.  Brownell was in the custody of the DOC from February 2021 to January 2024, when he was released on extended supervision.  During his time in custody, Brownell had a medium-security classification and was housed at the Dodge Correctional Institution ("DCI"), which houses maximum, medium, and minimum custody inmates as the usual intake site for the DOC.

At the time of Brownell's intake, the DOC determined that DCI's infirmary was the most suitable placement site for Brownell and his medical needs.  DCI's infirmary houses patients with any security classifications, but operates as a maximum-security unit.  As a result, plaintiff was confined to his cell 23 hours a day and had limited access to other resources available in the facility.

## B. Brownell's Transfer Requests

Beginning in March 2021, Brownell began requesting that he be transferred to Oshkosh Correctional Institution ("OCI"), a medium-security correctional facility. However, these requests were denied.  In April, Brownell filed an inmate complaint after being denied placement on the waiting list to transfer to OCI.  His complaint was dismissed because, as the DCI infirmary manager, defendant Michelle Burton, explained, there was no literal "waiting list" to transfer; rather, decisions to fill vacancies are based on a multi-disciplinary discussion about who is the best fit for the available bed at that time.

2

After this denial, plaintiff and his former legal representatives began to exchange correspondence and file appeals regarding his classification and placement with various DOC officials, including all of the other defendants: Jason Benzal, the DCI warden; Daisy Chase, a DCI deputy warden; Sandra DeYoung, a program and policy analyst for the DOC bureau of classification and movement; Michael Rivers, DOC director of the bureau of health services; and Kevin Carr, the DOC Secretary.

In November 2021, Burton completed a request for OCI to consider placing Brownell there. However, this placement request was also denied by OCI, with the explanation that Brownell being of "sound, state of mind" did not match "the rest of the dementia patient population which could cause concern for Mr. Brownell's overall mental health needs," and given Brownell's limited upper body mobility, OCI may not be safe for him because its dementia patient population can be combative.

## C. Brownell's Care Workers

In July 2021, Brownell also filed an inmate complaint because he had been denied access to "personal care workers" on June 7 and 8. A personal care worker ("PCW") is an inmate worker who assists persons with disabilities and/or mobility impairments with certain tasks. PCWs may help with transporting inmates around the institution and assisting with physical tasks that inmates cannot perform themselves, including among other tasks, tray set-up, shower/hygiene set-up, social interaction, and completion of non-legal forms.

From June 7-25, 2021, Brownell was further on Temporary Luck Up ("TLU") status within DCI. Inmates go on TLU status during the investigation of a potential conduct rule

violation and have restrictions on certain activities, including interactions with other inmates. While Brownell was on TLU status, he was housed in the DCI infirmary with a nurse call button, which could be used to request assistance from staff.

### D. Federal Lawsuit

In this court, plaintiff asserts claims under the Rehabilitation Act against defendants for disparate treatment and failure to provide reasonable accommodation by denying: (1) his request to be added to the wait list for or transferred to OCI; and (2) his access to PCWs on June 7 and 8, 2021. In response, defendants move for summary judgment contending that: (1) plaintiff cannot show that defendants intentionally discriminated against him; (2) plaintiff cannot show that defendants failed to provide a reasonable accommodation for his disability; and (3) plaintiff is no longer entitled to any relief under the Rehabilitation Act.

OPINION

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary-judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629

F.3d 697, 704 (7th Cir. 2011), and must consider only competent evidence of a type otherwise admissible at trial, *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that it is entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010). If that initial burden is met, then the non-moving party must show that material disputed issues of fact do exist preventing the entry of summary judgment. *Id*.

I.      **Plaintiff's Motion for Clarification and Relief**

Before addressing the merits of plaintiff's claim at summary judgment, the court will address plaintiff's two motions for clarification and any relief he may be entitled to receive. Plaintiff's first motion for clarification identifies five issues, each with three sub-questions. (Dkt. #106, at 5-6.) Collectively, however, the court understands plaintiff to be raising one essential question: how does the court reconcile defendant DeYoung's letter as a DOC analyst, stating that "there is no avenue to appeal," with the further assertion that plaintiff failed to exhaust some of his claims under *Ross v. Blake*, 578 U.S. 632 (2016), and the seeming acknowledgment that plaintiffs do *not* need to exhaust *unavailable* remedies, *Id.* at 642.

In granting that motion, the court clarifies that DeYoung's comments were in response to plaintiff's request for an administrative review of his security classification. As a result, the court noted in its exhaustion order that her "remarks would be material, at least as to plaintiff's appeal of his security classification." (Dkt. #61 at 12.) The court also took a step further by identifying a reasonable inference that DeYoung's comments were an inaccurate description of the steps plaintiff needed to take to pursue his claims to transfer institutions, making his

desired remedy unavailable, and excusing his failure to exhaust his inmate complaint provided it contained sufficient information to put defendants on notice of his Rehabilitation Act claim. (*Id.* at 13-14.)

However, there was no dispute that plaintiff *had been properly informed* regarding the appeal process for his other alleged injuries, specifically his Eighth Amendment claim for prolonged isolation. Because of this distinction, the analysis turned on the more traditional questions of whether one or more of plaintiff's grievances: (1) contained "only one clearly identified issue" with "sufficient information for the department to investigate and decide the complaint[,]" Wis. Admin. Code § DOC 310.07(5)-(6); and (2) were fully appealed through the internal administrative process, *Burrell v. Powers*, 431 F.3d 282, 285 (7th Cir. 2005). Further, as the court noted throughout its exhaustion order, plaintiff's four, relevant grievances did *not* provide sufficient notice that he was complaining about prolonged isolation, resulting in the court granting summary judgment to defendant on that claim. (Dkt. #61, at 9, 14-15, 17, and 19.)

In his second motion for clarification, plaintiff seeks clarity on what evidence may be relevant to his remaining claims. (Dkt. #117, at 2.) However, this second motion may be better understood as a motion to compel discovery in the face of defendants' relevance objections and plaintiff's request for the court to step in and resolve that issue. (*Id.*) In that context, plaintiff's motion must be denied without prejudice to its renewal at a later date, because he had ample time to pursue discovery and raise issues to the court before any summary judgment filings.

As to plaintiff's potential relief during the pendency of this case, plaintiff was discharged from DOC custody and is no longer being held at DCI, mooting his requests

for any injunctive relief.[1]  Additionally, defendants contend that plaintiff cannot show that their conduct caused his physical injuries, precluding recovery for any monetary damages. At this stage, however, the court is satisfied based on plaintiff's testimony that the defendants' conduct caused him "physical injury, functional impairment, loss of use, and pain," which at least facially would appear sufficient to demonstrate that defendant's activity caused some injury and harm.

## II.    The Rehabilitation Act Claims

Plaintiff's substantive claims are all brought under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, which provides that  "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  The court granted plaintiff leave to proceed on disparate treatment and reasonable accommodation claims under the Act regarding his request to be added to a wait list for transfer or just transferred to OCI and his denial of access to PCWs on June 7 and 8, 2021. (Dkt. #40.)

To prove a disparate treatment claim under the Rehabilitation Act, plaintiff must show that:  (1) he is a qualified person (2) with a disability, (3) the DOC denied him access to a program or activity because of his disability, and (4) the DOC accepts federal funds.

---

[1] Independent of the court's analysis below, plaintiff's claims against defendants Rivers, Benzel, Chase, Burton, DeYoung must be dismissed because his requests for injunctive relief are moot. (Dkt. #40 at p. 5 ( "[p]laintiffs may seek injunctive relief, but not damages under the Rehabilitation Act against individual prison officials." (citations omitted)).)

*Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012).  In addition, to prove a reasonable accommodation claim, plaintiff must prove that: "(1) he was a qualified individual with a disability; (2) defendants knew of his disability; [] (3) defendants failed to reasonably accommodate his disability"; and (4) the defendants accept federal funds. *Brumfield v. City of Chicago*, 735 F.3d 619, 631 (7th Cir. 2013).  Finally, to collect compensatory damages, plaintiff must prove that the disability discrimination he faced was intentional, requiring a showing that defendants had "(1) knowledge that a harm to a federally protected right is substantially likely and (2) a failure to act upon that likelihood." *Lacy v. Cook Cnty., Illinois*, 897 F.3d 847, 857 (7th Cir. 2018) (citations omitted).

### A.  Transfer Requests

As for plaintiff's claims regarding his request to be transferred to or put on the waiting list for transfer to a bed at OCI, a medium-security infirmary, he maintains that defendants' refusal to transfer constitutes intentional discrimination, but he has failed to refute defendant's valid, non-discriminatory reasons for refusing this accommodation and keeping him housed at DCI.  Specifically, defendants attest that DOC's placement decisions are based on a multi-disciplinary discussion with many facets in determining who is the best fit for available beds, and more specifically that in plaintiff's case, which involved determining what facilities would be the best to accommodate *both* the advanced level of care and assistance that plaintiff needed *and* his fit with and protection from other patients. For example, when OCI denied plaintiff's transfer request, they credited concerns for his mental health and physical safety due to their population of dementia patients.  Rather than unfair discrimination, this supports an inference that defendants were doing the most

they could to see that plaintiff's needs were best managed given their limited resources, not failing to act upon a likelihood that his rights would be substantially harmed.

Plaintiff disputes whether *other* facilities were not suitable to provide the medical care that he needed, but that is of no moment because plaintiff only sought a transfer to OCI and the court need not assess whether defendants' determination on plaintiff's care status is appropriate as long as evidence supports their conclusions. *See Stowe v. Van Rybroek*, No. 18-CV-321-WMC, 2021 WL 4904663, *6 (W.D. Wis. Oct. 21, 2021) ("the court need not assess whether plaintiff's high-risk status is appropriate or how much of a burden transferring plaintiff sooner would have been as long as evidence supports those conclusions"). Rather, at the summary judgment stage, once a defendant provides evidence that an action was taken for non-discriminatory reasons, as defendants here have done, the onus is on the plaintiff to refute that evidence with his own. Plaintiff has wholly failed to do so, instead offering his own opinion as to what should have occurred. The court will not second-guess defendants' good faith basis for believing otherwise, and no reasonable jury would either, precluding a finding that defendant intentionally discriminated against plaintiff based on his disability when they did not transfer him from DCI. Accordingly, defendants are entitled to an award of summary judgment in their favor on this claim.

### E. Access to Care Workers

As for plaintiff's claims regarding his requests for additional PCWs on June 7 and 8, 2021, constitutes discrimination, he again fails to refute defendant's valid, non-discriminatory reasons for denying additional assistance at the time. Specifically, on the two days in question, defendants attest that plaintiff was on TLU status, which limited an

9

inmates contact with other inmates *and* was provided a nurse call button to request assistance from DCI staff at any time. This supports an inference that defendants were allocating its resources to ensure that it could meet plaintiff's needs while managing the needs of the larger institution, not ignoring a harm was substantially likely to occur to his rights.

While plaintiff disputes the quality or responsiveness of care he received during this time, he does *not* dispute that he was on TLU status; he should have been on TLU status; its purpose is to limit access to other inmates; and he had access to a nurse call button. Once again, therefore, plaintiff has failed to refute defendants' non-discriminatory reasons for their conduct, and the court will not second-guess defendants' good faith basis for its decisions, which precludes a finding that defendants intentionally discriminated against plaintiff when they denied him access to PCWs on those two days. Accordingly, defendants are entitled to an award of summary judgment in their favor on this claim as well.

In summary, there is no genuine dispute as to material facts regarding defendants' intent when it denied plaintiff's request to transfer to OCI or for access to PCWs, and summary judgment is awarded in favor of defendants. Additionally, because plaintiff's claims are being dismissed, his motion requesting leave to identify and disclose a medical expert witness will be denied as moot.

ORDER

IT IS ORDERED that:

1) plaintiff's motion for clarification regarding this courts order on defendants' motion for summary judgment based on exhaustion (dkt. #106) is GRANTED;

2) plaintiff's motion for clarification regarding what evidence is relevant to plaintiff's remaining claims (dkt. #117) is DENIED without prejudice;

3) plaintiff's motion for leave to identify and disclose a medical expert witness (dkt. #121) is DENIED as moot;

4)  defendants' motion for summary judgment (dkt. #102) is GRANTED; and

5) the Clerk of Court is directed to enter judgment consistent with this opinion and close this case.

Entered this 13th day of March, 2026.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

11